**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**DAVID MUNIZ,**

      **Plaintiff,**

      **vs.**                                              **Civ. No. 19-526 JFR**

**ANDREW SAUL, Commissioner
of SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 13) filed August 19, 2019, in support of Plaintiff David Muniz's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's claim for Title XVI benefits. On November 20, 2019, Plaintiff filed his Motion to Reverse or Remand. Doc. 20. The Commissioner filed a Response in opposition on February 14, 2020 (Doc. 24), and Plaintiff filed a Reply on March 5, 2020 (Doc. 25). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED**

### I. Background and Procedural History

Claimant David Muniz ("Mr. Muniz") alleges he became unable to work on January 1, 1999, at the age of 26, due to alleged impairments of bipolar disorder, posttraumatic stress

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 6, 8, 9.)

syndrome, depression, anxiety, chronic knee pain, and possible pseudobulbar disorder. Tr. 170-76, 196.[2] Mr. Muniz completed his GED in 1988 (Tr. 197), and has no past relevant work (Tr. 27).

On January 18, 2015, Mr. Muniz filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. Tr. 170-76. Mr. Muniz's application was initially denied on November 3, 2015. Tr. 66-75, 76, 94-97. It was denied again at reconsideration on October 20, 2016. Tr. 77-92, 93, 103-07. On November 4, 2016, Mr. Muniz requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 109-112. ALJ Stephen Gontis conducted a hearing on February 14, 2018. Tr. 33-65. Mr. Muniz appeared in person at the hearing with attorney representative Michelle Baca.[3] *Id.* The ALJ took testimony from Mr. Muniz, and an impartial vocational expert ("VE"), Thomas Greiner. *Id.* On July 26, 2018, ALJ Gontis issued an unfavorable decision. Tr. 10-28. On April 9, 2019, the Appeals Council issued its decision denying Mr. Muniz's request for review and upholding the ALJ's final decision. Tr. 1-7. On June 7, 2019, Mr. Muniz timely filed a Complaint seeking judicial review of the Commissioner's final decision. Doc. 1.

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

---

[2] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 13) that was lodged with the Court on August 19, 2019.

[3] Mr. Muniz is represented in these proceedings by Attorney Katherine O'Neal and Attorney Laura Johnson. Doc. 1.

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.* "Gainful work activity is work activity that you do for pay or profit." 20 C.F.R. §§ 404.1572(b), 416.972(b).

> perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5. The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

### B. <u>Standard of Review</u>

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence

4

as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

### III. <u>Analysis</u>

The ALJ made his decision that Mr. Muniz was not disabled at step five of the sequential evaluation. Tr. 27-28. Specifically, the ALJ found that Mr. Muniz had not engaged in substantial gainful activity since his application date of June 18, 2015. Tr. 15. The ALJ determined that Mr. Muniz had severe impairments of bipolar disorder, anxiety disorder, and dysfunction of a major joint. *Id.* The ALJ also considered Mr. Muniz's weight under the regulations and found his obesity to be nonsevere. Tr. 16. The ALJ determined that Mr. Muniz

5

did not have an impairment or combination of impairments that met or medically equaled the severity of a listing. Tr. 17-19. Proceeding to step four, the ALJ found that Mr. Muniz had the residual functional capacity to

> perform sedentary work as defined in 20 CFR 416.967(a) with additional limitations. The claimant can stand and/or walk up to 2 hours per 8 hour workday, and sit for up to 6 hours per 8 hour workday, with normal breaks. He can lift, carry, push or pull less than 10 pounds frequently, and 10 pounds occasionally. The claimant can climb ramps and stairs occasionally, but he can never climb ladders, ropes or scaffolds. He can balance, stoop, kneel, crouch, or crawl only occasionally. The claimant can work only occasionally in extreme cold, and he can never work at unprotected heights. The claimant is limited to performing simple, routine tasks, and in the use of judgment, he is limited to making simple work-related decisions. He is limited to work requiring frequent interaction with supervisors, but only occasional interaction with coworkers and the general public. The claimant can tolerate few changes in a routine work setting. The claimant's need for time off task can be accommodated with normal breaks.

Tr. 19. The ALJ further found at step four that Mr. Muniz had no past relevant work. Tr. 27. Based on the RFC and the testimony of the VE, the ALJ concluded at step five that there were jobs that exist in significant numbers in the national economy that Mr. Muniz could perform and that he was, therefore, not disabled.[5] Tr. 27-28.

In his Motion, Mr. Muniz argues (1) that ALJ Gontis erred as a matter of law by failing to resolve a conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Title ("DOT"), pursuant to SSR 00-4p; (2) that ALJ Gontis erred as a matter of law by neglecting to make the required factual finding of whether the jobs identified by the VE were

---

[5] The ALJ identified (1) document preparer, microfilm, DOT 249.587-018 (60,000 jobs nationally); (2) cutter and paster, press clippings, DOT 249.587-014 (5,000 jobs nationally); and (3) tube operator, DOT 239.687-014 (4,000 jobs nationally). Tr. 28.

significant; and (3) that ALJ Gontis erred as a matter of law when weighing state agency psychological consultant examiner Dr. Amy DeBernardi's opinion. Doc. 20 at 7-17.

For the reasons discussed below, the Court finds the ALJ failed to resolve the conflict between the VE testimony and the DOT for the job of document preparer. This is error. This case, therefore, requires remand.

> A. **The ALJ Failed to Resolve the Conflict Between the VE Testimony and the DOT for the Job of Document Preparer**

At step 5, the burden shifts to the Commissioner to prove that the claimant can perform other work existing in significant numbers in the national economy. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). Relying on *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005), Mr. Muniz argues that the ALJ failed to reconcile inconsistences between his own finding that Mr. Muniz is "limited to performing simple, routine tasks, and in the use of judgment, he is limited to making simple work-related decisions," and the VE's testimony that Mr. Muniz could perform the job of document preparer, which requires a reasoning level of three. Doc. 20 at 7-9. The Court concurs because under binding Tenth Circuit precedent, a conflict existed requiring the ALJ to provide an adequate explanation that Mr. Muniz could perform work the DOT indicates he could not perform given his RFC. Because the ALJ did not offer an explanation, the Court must remand for the ALJ to do so.

Based on the testimony of the VE, the ALJ identified three jobs that Mr. Muniz could perform:

1. Document Preparer, Microfilm, DOT Code 249.587-018, SVP 2, Sedentary, 60,000 jobs nationally;

2. Cutter and Paster, Press Clippings, DOT Code 249.587-014, SVP 2, Sedentary, 5,000 jobs nationally; and

   3. Tube Operator, DOT Code 239.687-014, SVP 2, Sedentary, 4,000 jobs nationally.

Tr. 28. The Dictionary of Occupational Titles classifies each job according to its required "General Educational Development" (GED). This classification "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Components of the Definitional Trailer, Appx. C, § III, 1991 WL 688702. "The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id.* The "reasoning" scale runs from one to six, with six signaling jobs that call for the most complex reasoning. A reasoning level of three indicates a job that requires the application of "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and requires "[d]eal[ing] with problems involving several concrete variables in or from standardized situations." DOT, Appx. C, § III, 1991 WL 688702.

  The Tenth Circuit has held that "an ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). After the Tenth Circuit's holding in *Haddock*, the Social Security Administration promulgated Social Security Ruling ("SSR") 00-4p and further clarified the ALJ's affirmative responsibility to ask about such conflicts. SSR 00-4p instructs that

> [w]hen vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified.

2000 WL 1898704, at *4.

Here, the ALJ failed to resolve the apparent conflict between the DOT and the VE's testimony about the document preparer job. In *Hackett*, the Tenth Circuit found that a limitation to "simple routine work tasks" is more consistent with jobs requiring level two reasoning. 395 F.3d at 1176. In so doing, the Tenth Circuit agreed with the claimant that there was an apparent conflict between a claimant's inability to perform more than simple and repetitive tasks and the level three reasoning required by the jobs identified. *Id.* It held that an ALJ may not conclude that a claimant who is restricted to "simple and routine work tasks" can perform a reasoning-level-three job without addressing this conflict. *Id.*

The conflict between the ALJ's RFC and the job of document preparer identified in this case is exactly the same conflict the Tenth Circuit addressed in *Hackett*: a limitation to "simple, routine tasks" is inconsistent with reasoning-level-three jobs. Tr. 19; *Hackett*, 395 F.3d at 1176. Under *Hackett* and SSR 00-4p, therefore, the ALJ was required to evaluate the apparent conflict and, based on his assessment of this conflict, either (1) explain why it was reasonable to conclude that Mr. Muniz would be able to satisfy the specific characteristics of the jobs at issue despite the apparent conflict between the job requirements and his abilities, **or** (2) reject the VE testimony due to the conflict.

The Commissioner generally agrees that when an ALJ limits a claimant to simple work, the ALJ should resolve conflicts that arise with respect to that non-exertional limitation and job descriptions in the DOT. Doc. 24 at 15. That said, the Commissioner contends that SSR 00-4p supports the conclusion that unskilled jobs can be performed by someone who is limited to simple work. Doc. 24 at 16. The Commissioner also contends that SSR 00-4p does not mention GED levels in the context of evaluating "simple tasks," and is unclear on how GED levels are

9

useful in identifying conflicts that need to be resolved. *Id.* Finally, the Commissioner contends that the GED levels do not focus on mental requirements, but describes in general terms the educational level expected of someone who performs a given job. *Id.* The Commissioner, therefore, argues that it was not unreasonable for the ALJ to rely on the VE testimony to determine that Mr. Muniz could perform a job that requires a reasoning level of three, because Mr. Muniz has a GED and completed several college classes, and because the job of document preparer has a specific vocational preparation (SVP) time of 2, which corresponds to unskilled work. *Id.*

Numerous unpublished cases in the Tenth Circuit agree that the reasoning level of a job does not correspond to whether the job is skilled or unskilled. *See Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) ("GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job...."); *Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012) ("Job descriptions in the Dictionary of Occupational Titles contain several elements required to perform a specific job, including a claimant's GED, which is the level of formal and informal education required to perform a specific job. There is no genuine dispute that Mounts retained the GED to perform the jobs as an appointment clerk, escort vehicle driver, or dispatcher, as testified to by the VE."); *Sandoval v. Barnhart*, 209 F. App'x 820, 825 (10th Cir. 2006) ("[t]he adequacy of Ms. Sandoval's educational development is not in dispute"). However, these cases do not cite *Hackett*, much less reconcile their reasoning with its holding. And because they are unpublished, they are not precedential. 10th Cir. R. 32.1(A). Lower courts, therefore, must follow *Hackett* over the unpublished cases. The fact that *Hackett* did not consider this particular argument does not undermine its precedential effect.

Additionally, the Commissioner's argument fails to consider that the SVP and the reasoning-level codes measure different things. *See Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (identification of unskilled jobs "just accounted for issues of skill transfer, not impairment of mental functions—which are not skills, but, rather, general prerequisites for most work at any skill level" (internal quotation marks omitted)). More significantly, however, *Hackett* forecloses this argument. *Hackett*, 395 F.3d at 1176 (recognizing that many unskilled, sedentary jobs require reasoning levels of two or higher (citing *Lucy v. Chater,* 113 F.3d 905, 909 (8th Cir. 1997)). As such, the Commissioner fails to offer any reasonable basis for this Court to conclude that the holding in *Hackett* does not require a remand in this case.[6]

### B. Remaining Issues

The Court will not address Mr. Muniz's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### IV. Conclusion

For the reasons stated above, the Court finds Mr. Muniz's Motion to Reverse or Remand (Doc. 20) is well taken and is **GRANTED.**

_____
**JOHN F. ROBBENHAAR
United States Magistrate Judge,
Presiding By Consent**

---

[6] The Court notes that after eliminating the document preparer job, 9,000 national jobs remain. *See Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (citing *Trimiar v. Sullivan*, 966 F.2d 1326, 1330-32 (10th Cir. 1992) (explaining that "the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and . . . the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.")). Although Mr. Muniz raises the issue of numerical significance of 69,000 national jobs, having determined that remand is required for the ALJ to address the conflict between the VE's testimony and the DOT regarding the document preparer job and noting that the Commissioner did not argue harmless error, the Court does not address the numerical significance issue. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).